## HOWARD *v.* CARUSI and Another.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued December 10th, 11th, 1883.—Decided January 7th, 1884.

### *Devise—Power—Trust.*

1. A devise of real estate and bequest of personal property " to my brother S. C. to be held, used, and enjoyed by him, his heirs, executors, administrators and assigns forever, with the hope and trust, however, that he will not diminish the same to a greater extent than may be necessary for his comfortable support and maintenance, and that, at his death, the same, or so much thereof as he shall not have disposed of by devise or sale, shall descend to my three beloved nieces P. E. C., G. E. C., and I. E. C., is, as to real estate, a devise to S. C. in fee simple, with no limitations over ; and creates no trust, executory or otherwise.

2. An execution of a power to name beneficiaries to take under a deed which designates A., his heirs, executors, administrators and assigns forever, with the hope and trust that he will not diminish the same, and a provision that at his death so much thereof as he shall not have disposed of by devise or sale shall descend to B., vests the fee simple absolute in A. with no remainder to B.

The pleadings and evidence in this case disclose the following facts : On March 18th, 1872, Lewis Carusi, a bachelor about 78 years of age, and a citizen of the city of Washington, in the District of Columbia, being seized in fee of certain real estate in said city, executed his last will and testament. In the first item of the will he directed his just debts and funeral expenses to be paid out of his personal estate. The second item of the will was as follows :

" And as to all my property, real, personal, and mixed, after the payment of my just debts and funeral charges as aforesaid and the payment of the legacies hereinafter mentioned, I give, devise, and bequeath the same to my brother Samuel Carusi, to be held, used, and enjoyed by him, his heirs, executors, administrators, and assigns forever, with the hope and trust, however, that he will not diminish the same to a greater extent than may be necessary for his comfortable support and maintenance, and that at his death, the same, or so much thereof as he, the said Samuel Carusi, shall not have disposed of by devise or sale, shall descend to my three beloved nieces, Phillippa Estelle Caulfield, *née* Carusi, Genevieve E. Carusi, and Isolina E. Carusi, the daughters of my said brother Samuel Carusi, as follows : To the said Phillippa Estelle Caulfield, *née* Carusi, the sum of five thousand dollars ($5,000), the remainder of my estate to be divided between Genevieve E. Carusi and Isolina E. Carusi, to share and share alike as tenants in common and not as joint tenants, and so that they, and they alone, shall have the right to have, possess, use, and enjoy the same separate and apart from and independent of any husband either one of them may have at the time of my decease or at any time thereafter, and so that he or they shall have no right, privilege, or power to control or interfere with any part of my said estate in any manner whatsoever, and so that the same shall not be subject or liable to any debt that any such husband may have incurred.

" I further hope, trust, and desire that in the event either one of my said nieces, daughters of the said Samuel Carusi, shall not survive my said brother Samuel, that the share she might become entitled to had she survived him may be conferred and fall to the surviving niece or nieces.   In no event shall any portion of my estate be subject to the control or interference of any husband either one of my said nieces may have at the time of my decease or at any time thereafter.

" I give and devise to my three nieces, daughters of my brother Nathaniel Carusi, the sum of two thousand dollars ($2,000.)"

By the third and last item of the will the testator appointed his brother, Samuel Carusi, the sole executor thereof.

Afterwards, on July 18th, 1872, the said Lewis Carusi, as party of the first part, executed a deed of that date which purported to convey to his brother, Samuel Carusi, party of. the

second part, in fee simple, all his real estate in the city of Washington, upon trusts which were thus expressed:

" In trust nevertheless to, for, and upon the following uses and trusts, that is to say, in trust to sell and convey the whole or any part of the said pieces or parcels of ground and premises at the discretion of the said party of the second part, and to invest the moneys arising out of such sale or sales in other property or securities for the use and benefit of the said party of the first part.; and in the event of the death of the said party of the first part, so much of said pieces or parcels of ground as may remain unsold, or such other property as may be purchased, or such securities as may .be acquired, in manner aforesaid, to convey to such person or persons as the said party of the first part may, by his last will and testament or other paper-writing, under his hand and seal, by two persons witnessed, designate and direct."

The appellant averred, and the defendants denied, that this deed had been delivered by the grantor to the grantee therein named.

Subsequently, on October 17th, 1872, Lewis Carusi executed and delivered to his brother, Samuel Carusi, another deed, conveying to him absolutely in fee simple the same lands described in said will and in the deed of July 18, reserving to himself the rents and profits thereof during his life.

On October 25th, 1872, Lewis Carusi died, having made no will other than that of March 18th, 1872, above mentioned. After the death of Lewis, Samuel Carusi took possession of the real estate described in said will and deeds, claiming an absolute title in fee simple thereto by virtue of said will and the deed of October 17th, 1872, and continued in possession until his death. On March 23d, 1877, he duly executed his last will and testament, by which he devised to his wife, Adelaide S. Carusi, for her natural life, all his real estate, with remainder in fee at her death to his children, John McLean Carusi, Samuel P. Carusi, Thornton Carusi, Estelle Caulfield, Genevieve Carusi, and Isolina E. Howard, share and share alike, and appointed his wife, the said Adelaide S., and his son, the said John McLean Carusi, the executors thereof.

Afterwards, on December 22d, 1877, Samuel Carusi died, and on January 8th, 1878, his will was admitted to probate and record in the Orphans Court of the District of Columbia.

The bill in this case was filed by Isolina E. Howard, one of the children and heirs at law of Samuel Carusi, against the defendants, who were her brothers and sisters and devisees under their said father's will. It averred the making by Lewis Carusi of his said will and of the deeds of July 18th and October 17th, 1872, and specially averred the delivery by Lewis Carusi to his brother Samuel of the first-mentioned deed. It averred that the deed of October 17th, 1872, was made by Lewis Carusi when he was physically so feeble as to be unable to sign his name, " and when he was mentally incompetent to execute a deed; that at the time said deed was made by him he had no legal title to the real estate therein described, having divested himself thereof by the deed of trust of July 18th, 1872, and that he was procured to make said deed of October 17th by Samuel Carusi, for whose benefit it was made."

The bill further alleged that the will of Lewis Carusi was propounded for probate and record in the proper court, but a caveat having been filed against the probate thereof, no proceedings were taken or decree made in reference thereto.

The bill charged that the will of Lewis Carusi fully designated the beneficiaries of the trusts created by the deed of trust of July 18th, 1872, and that Samuel Carusi had no estate in the property belonging to Lewis Carusi which he could dispose of by his last will so as to divest the plaintiff and her sisters of their rights under the last will and testament of Lewis Carusi and that Samuel Carusi was only a trustee to hold the property during the lifetime of Lewis Carusi, and upon trust to convey the same upon the death of Lewis to the complainant and her sisters in manner set forth in Lewis Carusi's last will and in said deed of trust.

The bill further alleged that Samuel Carusi, with the purpose of defeating the provisions of the will and deed of trust executed by Lewis Carusi, did, during his own lifetime, suppress the deed of trust and claimed an absolute title in fee simple to all the estate of Lewis Carusi under the will of the latter and the deed

of October 17th, 1872. Finally, the bill alleged that Lewis Carusi, during his lifetime, repeatedly

"Declared, in most unmistakable terms, that it was his intention to leave his estate, by any testamentary disposition he should make thereof, to his nieces, to the exclusion entirely of any nephews that might survive him, and to the exclusion of the wife of the said Samuel Carusi, should she survive him; . . and that it was the intention of Lewis Carusi to make provision at all events for his said several nieces in preference to all persons and to every person who might, by reason of affinity, have any claim upon him or his estate."

The bill prayed for a decree declaring the deed of trust dated July 18th, 1872, to be in full force and effect, and that the will of Lewis Carusi was operative as designating the beneficiaries under the deed of trust, and its terms and conditions; that the will of Samuel Carusi, so far as it devises any part of the estate of which Lewis Carusi died seized, might be declared null and void; that a receiver might be appointed to take charge of and manage the estate, and that the defendants, Adelaide S. Carusi and John McLean Carusi, named as executors of the will of Samuel Carusi, might be enjoined from interfering in any way with the estate of Samuel Carusi, and for general relief.

*Mr. William B. Webb* for appellant.
*Mr. L. G. Hine* for appellees.

Mr. Justice Woods delivered the opinion of the court.

The case made by the bill of complaint is based on the will of Samuel Carusi, and upon the deed of trust alleged to have been executed and delivered July 18th, 1872. The contention of complainant is that, by the deed Lewis Carusi conveyed to Samuel Carusi all his real estate in trust to convey the same to such person or persons as the said Lewis Carusi might, "by his last will and testament, or other paper writing under his hand and seal, by two persons witnessed, designate and direct;" and that although the will was revoked by the trust deed, it was nevertheless effectual as a designation of the persons to whom

said real estate was to be conveyed by Samuel Carusi, the trustee; and that the complainant and her sister, Genevieve Carusi, were the persons who were so designated by the will. It is clear, therefore, that complainant's case can derive no aid from the declarations of the testator, Lewis Carusi, alleged to have been made before and after the execution of his will, in relation to the disposition which he intended to make of his property. It must stand or fall upon the designation made in the will.

It is clear, also, that the will is to receive precisely the same construction, as an instrument designating the beneficiaries of the trust deed, as it would have received as a last will duly proven and recorded. The question is, therefore, what estate did the testator intend to give the complainant by his will of March 18th, 1872?

This will gives, first, an estate in fee simple to Samuel Carusi; it contains, second, the expression of a hope and trust that he will not unnecessarily diminish the estate; and, third, it gives to the nieces of the testator so much of his estate as Samuel Carusi shall not at his death have disposed of by sale or devise. We have, then, devised to Samuel Carusi an estate in fee simple, with an absolute power of disposition either by sale or devise clearly and unmistakably implied. Therefore, according to the adjudged cases, the limitation over to the nieces of the testator is void.

The rule is well established that, although generally an estate may be devised to one in fee simple or fee tail, with a limitation over by way of executory devise, yet when the will shows a clear purpose of the testator to give an absolute power of disposition to the first taker, the limitation over is void.

Thus, in the case of *Attorney-General* v. *Hall*, Fitg-G. 314, there was a devise of real and personal estate to the testator's son and to the heirs of his body, and that if he should die leaving no heirs of his body, then so much of the real and personal estate as he should be possessed of at his death was devised over to the complainants in trust. The son in his lifetime suffered a common recovery of the real estate, and made a will as to the personal estate, and died without issue, and a bill was filed against his executor to account. It was held by Lord

Chancellor King, aided by the master of the rolls and the chief baron of the exchequer, that the devisee was tenant in tail of the real estate, and had barred the plaintiffs by the common recovery, and that the executrix was not to account for the personal estate to the persons claiming under the limitation, for that was void as repugnant to the absolute ownership and power of disposal given by the will.

In the case of *Ross* v. *Ross*, 1 Jac. & Walker, 154, a limitation over was declared void because it was limited upon the contingency that the first taker did not dispose of the property by will or otherwise. See also *Cuthbert* v. *Purrier*, Jac. 415; *Bourn* v. *Gibbs*, 1 Russ. & Mylne, 614; *Hownes* v. *Godson*, 8 DeG. M. & G. 152.

The American cases are to the same effect. Thus, in *Jackson* v. *Bull*, 10 Johns. 18, Charles Bull died seized of the premises in question. By his last will, after devising a certain lot of land to his son Moses, he declared: "In case my son Moses should die without lawful issue, the said property he died possessed of I will to my son Young, his lawful issue," &c. It was held that the limitation over was void as being repugnant to the absolute control over the estate which the testator intended to give.

In *Ide* v. *Ide*, 5 Mass. 500, the devise was to the testator's son Peleg, his heirs and assigns, with the following provision: "And further, it is my will that if my son Peleg shall die and leave no lawful heirs, what estate he shall leave to be equally divided between my son John Ide and my grandson Nathaniel Ide, to them and their heirs forever." Held that his limitation over to John and Nathaniel Ide was void because inconsistent with the absolute unqualified interest in the first devisee.

To the same effect is the case of *Bowen* v. *Dean*, 110 Mass. 432, where a man devised all his estate, real and personal, to his wife, "to hold to her and her assigns," but should she "die intestate and seized of any portion of said estate at the time of her death," then over. The wife took possession of the land and died having made a will by which she devised and bequeathed all her estate, real and personal. It was held, that the will of the husband gave the wife, by necessary implica-

tion, an absolute power of disposal, either by deed or will, and this power having been fully executed by her will, nothing remained upon which the devise over in the will of her husband could operate.

In *Melson* v. *Cooper*, 4 Leigh, 408, the case was this: John Cooper died in 1813 seized of the messuage and land in controversy, having, by his last will duly executed, devised, *inter alia*, as follows: " I give to my son, William Cooper, the plantation I.live on, to him and his heirs forever. In case he should die without a son and not sell the land, I give the land to my son, George," &c. The plantation on which the testator lived was the land in controversy. George Cooper, the lessee of the plaintiff, was the testator's son George mentioned in the devise, who claimed the land under the limitation over to him therein contained. The testator's son William, to whom the land was devised in the first instance, attained to full age, married, and died, leaving issue one daughter, but without leaving or ever having had a son, and without having sold the land. The question referred to the court was whether, upon this state of facts, George Cooper was entitled to the land. The court held that a general, absolute, unlimited power to sell the land was given to William Cooper by the devise, and he took a fee simple, and that George Cooper was not entitled to recover. See also *Gifford* v. *Choate*, 100 Mass. 343; *Hale* v. *Marsh*, Ib. 468; *Ramsdell* v. *Ramsdell*, 21 Me. 288.

The rule is thus stated by Chancellor Kent: " If there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A in fee, and if he dies *possessed* of the property without lawful issue, the remainder over, or remainder over of the property which he, dying without heirs, should *leave*, or without *selling* or devising the same; in all such cases the remainder over is void as a remainder because of the preceding fee; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate, or power of disposition expressly given, or necessarily implied by the will." 4 Kent's Com., 271.

If the will of Lewis Carusi had remained unrevoked and had been duly proven and recorded, and Samuel Carusi had died

intestate, with all the property devised to him by Lewis Carusi undisposed of, the complainant would be entitled to no relief, for she would have taken nothing by the will. If the will can be held to designate any beneficiary under the trust deed of July 18th, 1872, it designated Samuel Carusi and not the complainant and her sisters.

But by the terms of Lewis Carusi's will, the complainant and her sisters were only entitled to so much of the estate of Lewis as Samuel should "not have disposed of by devise or sale." The bill of complaint charges that Samuel Carusi, by his last will and testament, had devised to certain persons therein named, among them the complainant, all the property devised to him by the last will of Lewis Carusi. There was, therefore, no property of the estate of Lewis Carusi to which the supposed devise to complainant and her sisters could apply.

The case of complainant receives no support from the precatory words of the will of Lewis Carusi. These words express " the hope and trust that Samuel Carusi will not diminish the same (viz., the property devised to him by the will) to a greater extent than may answer for his comfortable support," and the testator then devises to complainant and her sisters what Samuel shall not have disposed of by devise or sale.

The words do not raise any trust in Samuel. He is not made a trustee for any purpose, and no duty in respect to the disposition of the estate is imposed upon him. But even if the will had contained an express request that Samuel should convey to the complainant so much of the estate as he did not dispose of by sale or devise, there would be no trust, for the will, as we have seen, gives Samuel Carusi the absolute power of disposal.

In *Knight* v. *Knight*, 3 Beavan, 148, it was said by the Master of the Rolls (Lord Langdale) :

" If the giver accompanies his expression of wish or request by other words, from which it is to be collected that he did not intend the wish to be imperative, or if it appears from the context that the first taker was to have a discretionary power to withdraw any part of the subject from the wish or request, . . . it has been held that no trust was created."

And see *S. C.* nom. *Knight* v. *Boughton*, 11 Cl. & Fin. 513.

The rule is thus stated by Mr. Justice Story in his Commentaries on Equity Jurisprudence, § 1070 :

" Whenever the objects of the supposed recommendatory trust are not certain or definite, whenever the property to which it is to attach is not certain or definite, whenever a clear discretion or choice to act or not to act is given, whenever the prior dispositions of the property import absolute and uncontrollable ownership, in all such cases courts of equity will not create a trust from words of this character."

See also *Wood* v. *Cox*, 2 Mylne & Craig, 684 ; *Wright* v. *Atkyns*, Turn. & Russ. 143 ; *Stead* v. *Mellor*, 5 Ch. D. 225 ; *Lambe* v. *Eames*, L. R. 10 Eq. 267 ; *S. C.* 6 Ch. D. 597 ; *Hess* v. *Singler*, 114 Mass. 56 ; *Pennock's Estate*, 20 Penn. St. 268 ; *Van Dyne* v. *Van Dyne*, 1 McCarter (N. J.), 397 ; 2 Pomeroy's Eq. Jur. §§ 1014, 1015, 1016, 1017, and notes.

The views we have expressed render it unnecessary to consider other questions argued by counsel. It is quite immaterial whether or not Lewis Carusi had mental capacity to execute the deed of October 17th, 1872, or whether he had any title to the property described therein. If that deed had never been executed the fact would not aid the complainant's case.

The result is that the decree of the Supreme Court of the District of Columbia in general term by which the decree of the special term dismissing the complainant's bill was affirmed was right, and must itself be

*Affirmed.*